IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | |
|---|---|
| Steven Howard and Heather Smothers, | |
| *On behalf of themselves and those similarly situated*, | Case No. |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| Chaac Pizza Midwest, LLC; Luis Ibarguengoytia; Doe Corporation 1–10; John Doe 1–10; | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Steven Howard and Heather Smothers, on behalf of themselves and similarly-situated individuals, bring this action against Defendants Chaac Pizza Midwest, LLC; Luis Ibarguengoytia; Doe Corporation 1–10; and John Doe 1–10 ("Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Kentucky Revised Statutes ("K.R.S.") § 337.010, *et. seq.*, and for unjust enrichment under Kentucky common law.

2.     Upon information and belief, Defendants operate approximately 119 Pizza Hut store locations across Kentucky, Indiana, Maryland, New Jersey, New York, Pennsylvania, Washington, D.C., and Ohio.

3.      Upon information and belief, Defendants operate three Pizza Hut store locations in Kentucky ("Defendants' Pizza Hut stores").

4.      Plaintiffs seek to represent the delivery drivers who have worked at the Defendants' Pizza Hut stores in Kentucky.

5.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and Kentucky law by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

6.      Defendants improperly deducted the costs for work shoes from delivery drivers' paychecks. This caused delivery drivers' wage rates to drop below minimum wage.

7.      All delivery drivers at the Defendants' Pizza Hut stores, including Plaintiffs, have been subject to the same or similar employment policies and practices.

**Jurisdiction and Venue**

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' Kentucky law claims.

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

**<u>Plaintiffs</u>**

**Steven Howard**

11.     Plaintiff Steven Howard is a resident of Kentucky.

12.     Plaintiff Howard was an "employee" of all of the Defendants as defined in the FLSA and Kentucky wage law.

13.     Plaintiff Howard has given written consent to join this action.

**Heather Smothers**

14.     Plaintiff Heather Smothers is a resident of Kentucky.

15.     Plaintiff Smothers was an "employee" of all of the Defendants as defined in the FLSA and Kentucky wage law.

16.     Plaintiff Smothers has given written consent to join this action.

**Defendants**

**Chaac Pizza Midwest, LLC**

17.     Defendant Chaac Pizza Midwest, LLC is a Delaware limited liability company.

18.     Chaac Pizza Midwest, LLC is the entity that operates the Defendants' Pizza Hut stores.

19.     Upon information and belief, Chaac Pizza Midwest, LLC owns approximately 119 Pizza Hut stores across Indiana, Kentucky, Maryland, New Jersey, New York, Ohio, Pennsylvania, and Washington, D.C.

20.     Upon information and belief, Chaac Pizza Midwest, LLC owns three Pizza Hut stores in Kentucky.

3

21.    Chaac Pizza Midwest, LLC is the entity that appears on Plaintiffs' paystubs for work he completes for Defendants' Pizza Hut stores.

22.    Chaac Pizza Midwest, LLC has substantial control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

23.    Chaac Pizza Midwest, LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

24.    At all relevant times, Chaac Pizza Midwest, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

25.    Chaac Pizza Midwest, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA and Kentucky law.

26.    At all relevant times, Chaac Pizza Midwest, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

27.    Chaac Pizza Midwest, LLC's gross revenue exceeds $500,000 per year.

**Luis Ibarguengoytia**

28.    Defendant Luis Ibarguengoytia is the owner of Chaac Pizza Midwest, LLC and the Defendants' Pizza Hut stores.

29.    Luis Ibarguengoytia is the President of Chaac Pizza Midwest, LLC.

30.    Luis Ibarguengoytia is the CEO of Chaac Pizza Midwest, LLC.

4

31.    Luis Ibarguengoytia is the owner of the Chaac Pizza Midwest, LLC.

32.    Upon information and belief, Luis Ibarguengoytia operates approximately 119 Pizza Hut stores across Indiana, Kentucky, Maryland, New Jersey, New York, Ohio, Pennsylvania, Washington, D.C.

33.    Upon information and belief, Luis Ibarguengoytia operates three Pizza Hut stores in Kentucky.

34.    Luis Ibarguengoytia is individually liable to the delivery drivers at the Defendants' Pizza Hut stores under the definitions of "employer" set forth in the FLSA and Kentucky law because he owns and operates the Defendants' Pizza Hut stores, serves as owner, president, and CEO of Chaac Pizza Midwest, LLC, ultimately controls significant aspects of the Defendants' Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

35.    Luis Ibarguengoytia is the franchisee of the Defendants' Pizza Hut stores.

36.    At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had financial control over the operations at each of the Defendants' Pizza Hut stores.

37.    At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has a role in significant aspects of the Defendants' Pizza Hut stores' day to day operations.

38.    At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had control over the Defendants' Pizza Hut stores' pay policies.

39.     At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had power over personnel and payroll decisions at the Defendants' Pizza Hut stores, including but not limited to influence of delivery driver pay.

40.     At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to hire, fire and discipline employees, including delivery drivers at the Defendants' Pizza Hut stores.

41.     At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to stop any illegal pay practices that harmed delivery drivers at the Defendants' Pizza Hut stores.

42.     At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to transfer the assets and liabilities of the Defendant entities.

43.     At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to declare bankruptcy on behalf of the Defendant entities.

44.     At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to enter into contracts on behalf of each of the Defendants' Pizza Hut stores.

6

45.     At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia has had the power to close, shut down, and/or sell each of the Defendants' Pizza Hut stores.

46.     At all relevant times, by virtue of his role as owner, president, and CEO of Chaac Pizza Midwest, LLC and of the Defendants' Pizza Hut stores, Luis Ibarguengoytia had authority over the overall direction of each of Defendants' Pizza Hut stores and was ultimately responsible for their operations.

47.     The Defendants' Pizza Hut stores function for Luis Ibarguengoytia's profit.

48.     Luis Ibarguengoytia has influence over how the Defendants' Pizza Hut stores can run more profitably and efficiently.

**Doe Corporation 1-10**

49.     Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Pizza Hut stores, and qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Kentucky law.

50.     Upon information and belief, Luis Ibarguengoytia owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' Pizza Hut stores operation.

51.     Upon information and belief, the franchisor, Pizza Hut stores Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Pizza Hut stores.

52.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

7

**John Doe 1-10**

53.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Kentucky law.

54.     Upon information and belief, Luis Ibarguengoytia has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores as that term is defined by the FLSA and Kentucky law.

55.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## Facts

### Class-wide Factual Allegations

56.     During all relevant times, Defendants have operated the Defendants' Pizza Hut stores.

57.     Plaintiffs, and the similarly situated persons Plaintiffs seek to represent, are current and former delivery drivers at the Defendants' Pizza Hut stores.

58.     All delivery drivers employed at the Defendants' Pizza Hut stores over the last three years have had essentially the same job duties.

59.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Pizza Hut stores cleaning up dishes, sweeping, making boxes, filling the ice container, and completing other duties inside the restaurant as necessary.

60.     Plaintiffs and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked on the road for Defendants' Pizza Hut stores.

61.     The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

62.     Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

63.     The delivery drivers at the Defendants' Pizza Hut stores work "dual jobs."

64.     Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cars to use while completing deliveries for Defendants.

65.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

66.     Defendants require delivery drivers at Defendants' Pizza Hut stores to provide cellphones to use while completing deliveries for Defendants.

67.     Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

68.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

69.     Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services,

automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

70.     The Defendants' Pizza Hut stores do not reimburse the delivery drivers' cellphone expenses.

71.     The Defendants' Pizza Hut stores do not track or record the delivery drivers' cellphone expenses.

72.     The Defendants' Pizza Hut stores reimburse their delivery drivers' vehicle expenses based on cents per mile driven.

73.     Defendants' vehicle reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

74.     The Defendants' Pizza Hut stores do not track or record the delivery drivers' actual expenses.

75.     The Defendants' Pizza Hut stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

76.     The Defendants' Pizza Hut stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

77.     The Defendants' Pizza Hut stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

78.     The Defendants' Pizza Hut stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

79.     The Defendants' Pizza Hut stores did not reasonably approximate the delivery drivers' expenses.

80.     Plaintiffs and similarly situated delivery drivers typically average between 7.5 and 8 miles per round-trip delivery.

81.     The Defendants' Pizza Hut stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

82.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.     2016: 54 cents/mile
    b.     2017: 53.5 cents/mile
    c.     2018: 54.5 cents/mile
    d.     2019: 58 cents/mile
    e.     2020: 57.5 cents/mile
    f.     2021: 56 cents/mile

83.     The delivery drivers at the Defendants' Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

84.     As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Kentucky law.

85.     Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Pizza Hut stores.

86.     Because Defendants paid their drivers a gross hourly wage at, or very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile

11

expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

87.     Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

88.     Defendants have also failed to properly inform Plaintiffs and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

89.     Defendants required Plaintiffs and similarly situated drivers to have and wear "Shoes for Crews" shoes.

90.     Plaintiffs and similarly situated delivery drivers at Defendants' Pizza Hut stores had deductions taken from their wages to pay for "Shoes for Crews" shoes.

91.     The shoe deductions taken from Plaintiffs and similarly situated drivers' wages were for the benefit of the Defendants.

92.     The shoe deductions taken from Plaintiffs and similarly situated drivers' wages caused their effective hourly wage rate to drop below minimum wage.

93.     Defendants have willfully failed to pay federal, Ohio, and Kentucky state minimum wage to Plaintiffs and similarly situated delivery drivers at the Defendants' Pizza Hut stores.

## Plaintiffs' Individual Factual Allegations

**Steven Howard**

94.     Plaintiff Howard worked at the Pizza Hut store located in Erlanger, Kentucky from approximately July 2019 to April 2021.

95.     Plaintiff Howard was paid minimum wage minus a tip credit for all hours worked while delivering Defendants' pizza and other food items.

96.     When Plaintiff Howard was not delivering food, he worked inside the restaurant. His work inside the restaurant included stocking, doing dishes, cleaning, and completing other duties inside the restaurant as necessary.

97.     Plaintiff Howard worked dual jobs.

98.     Plaintiff Howard's inside duties were not related to his delivery duties.

99.     Plaintiff Howard was paid at or near minimum wage for the hours he worked inside the store from approximately July 2019 to March 2021.

100.    Plaintiff Howard was paid at $10.00 per hour for the hours he worked inside the store from approximately March 2021 to April 2021.

101.    Plaintiff Howard was required to use his own car to deliver pizzas.

102.    Plaintiff Howard was required to use his own cellphone when delivering pizzas.

103.    Plaintiff Howard had the cost of shoes deducted from his pay.

104.    During his employment, Plaintiff Howard was reimbursed between approximately $0.28 per mile and $0.33 per mile.

105.    Defendants' reimbursement policy resulted in Plaintiff Howard usually receiving between $0.28 and $0.33 per mile.

106.    Plaintiff Howard was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

107.    Plaintiff Howard was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

108.    Plaintiff Howard was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

109.    Plaintiff Howard has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

110.    Defendants did not track the actual expenses incurred by Plaintiff Howard.

111.    Defendants did not ask Plaintiff Howard to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

112.    Defendants did not ask Plaintiff Howard to provide records of cellphone expenses he incurred while delivering pizzas for Defendants.

113.    Defendants did not reimburse Plaintiff Howard for his cellphone expenses.

114.    Defendants did not reimburse Plaintiff Howard based on his actual delivery-related expenses.

115.    Plaintiff Howard was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

14

116.   Defendants did not reimburse Plaintiff Howard based on a reasonable approximation of his expenses.

117.   In 2020, for example, the IRS business mileage reimbursement was $0.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff Howard by $0.295 per mile ($0.575 - $0.28).

118.   Plaintiff Howard estimates that, on average, he made 2.5 deliveries per hour and drove 7 miles per delivery. Based on Plaintiff Howard's estimate, Defendants under-reimbursed him $0.825 per delivery ($0.295 × 7 miles), and $2.065 per hour ($0.825 × 2.5 deliveries per hour).

119.   Defendants failed to properly inform Plaintiff Howard of the requirements for taking a tip credit.

120.   Defendants have failed to properly take a tip credit from Plaintiff Howard's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff Howard they would be taking.

121.   Defendants have failed to pay Plaintiff Howard minimum wage as required by law.

**Heather Smothers**

122.   Plaintiff Smothers worked at the Pizza Hut store located in Erlanger, Kentucky from approximately October 2020 to May 2021.

123.   Plaintiff Smothers was paid minimum wage minus a tip credit for all hours worked while delivering Defendants' pizza and other food items.

124.     When Plaintiff Smothers was not delivering food, she worked inside the restaurant. His work inside the restaurant included stocking, doing dishes, cleaning, and completing other duties inside the restaurant as necessary.

125.     Plaintiff Smothers worked dual jobs.

126.     Plaintiff Smothers inside duties were not related to her delivery duties.

127.     Plaintiff Smothers was paid $8.00 per hour for the hours she worked inside the store.

128.     Plaintiff Smothers was required to use her own car to deliver pizzas.

129.     Plaintiff Smothers was required to use her own cellphone when delivering pizzas.

130.     Plaintiff Smothers had the cost of shoes deducted from her pay.

131.     During her employment, Plaintiff Smothers was reimbursed between approximately $0.33 per mile and $0.35 per mile.

132.     Defendants' reimbursement policy resulted in Plaintiff Smothers usually receiving between $0.33 and $0.35 per mile.

133.     Plaintiff Smothers was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

134.     Plaintiff Smothers was required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

135.     Plaintiff Smothers was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

16

136.    Plaintiff Smothers has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incur cell phone and data charges all for the primary benefit of Defendants.

137.    Defendants did not track the actual expenses incurred by Plaintiff Smothers.

138.    Defendants did not ask Plaintiff Smothers to provide receipts of the expenses she incurred while delivering pizzas for Defendants.

139.    Defendants did not ask Plaintiff Smothers to provide records of cellphone expenses she incurred while delivering pizzas for Defendants.

140.    Defendants did not reimburse Plaintiff Smothers for her cellphone expenses.

141.    Defendants did not reimburse Plaintiff Smothers based on her actual delivery-related expenses.

142.    Plaintiff Smothers was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

143.    Defendants did not reimburse Plaintiff Smothers based on a reasonable approximation of her expenses.

144.    In 2020, for example, the IRS business mileage reimbursement was $0.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff Smothers by $0.245 per mile ($0.575 - $0.33).

145.     Plaintiff Smothers estimates that, on average, she made 2.33 deliveries per hour and drove 8 miles per delivery. Based on Plaintiff Smothers' estimate, Defendants under-reimbursed her $1.96 per delivery ($0.245 × 8 miles), and $4.567 per hour ($1.96 × 2.33 deliveries per hour).

146.     Defendants failed to properly inform Plaintiff Smothers of the requirements for taking a tip credit.

147.     Defendants have failed to properly take a tip credit from Plaintiff Smothers' wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Plaintiff Smothers they would be taking.

148.     Defendants have failed to pay Plaintiff Smothers minimum wage as required by law.

### Collective Action Allegations

149.     Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants in Kentucky, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

150.     At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

151.     Defendants' unlawful conduct is pursuant to a company policy or practice.

18

152.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

153.    Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

154.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiffs and other delivery drivers that they would pay.

155.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

156.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

157.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

158.    The FLSA Collective members are readily identifiable and ascertainable.

159.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of service awards upon resolution of this action.

**Kentucky Class Action Allegations**

160.    Plaintiffs bring the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Kentucky between the date five years prior to the filing of this complaint and the date of final judgment in this matter (the "Kentucky Wage Class").

19

161.    Plaintiffs bring the Fourth Count under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Kentucky between the date five years prior to the filing of this complaint and the date of final judgment in this matter (the "Kentucky Unjust Enrichment Class") (together with the Kentucky Wage Class, the "Kentucky Rule 23 Classes").

162.    Excluded from the Kentucky Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Kentucky Rule 23 Classes.

163.    The number and identity of the Kentucky Wage Class members are ascertainable from Defendants' records.

164.    The number and identity of the Kentucky Unjust Enrichment Class members are ascertainable from Defendants' records.

165.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Kentucky Wage Class member are determinable from Defendants' records.

166.    All of the records relevant to the claims of the members of the Kentucky Rule 23 Classes should be found in Defendants' records.

167.    For the purpose of notice and other purposes related to this action, the names and contact information of the members of the Kentucky Rule 23 Classes are readily available from Defendants.

168.   Notice can be provided by means permissible under Rule 23.

169.   Members of the Kentucky Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

170.   There are more than 50 Kentucky Wage Class members.

171.   There are more than 50 Kentucky Unjust Enrichment Class members.

172.   Plaintiffs' claims are typical of those claims which could be alleged by any member of the Kentucky Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Kentucky Rule 23 Classes in separate actions.

173.   Plaintiffs and the members of the Kentucky Rule 23 Classes have all sustained similar types of damages as a result of Defendants' failure to comply with Kentucky law.

174.   Plaintiffs and the members of the Kentucky Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

175.   Plaintiffs are able to fairly and adequately protect the interests of the Kentucky Wage Class and have no interests antagonistic to the Kentucky Wage Class.

176.   Plaintiffs are able to fairly and adequately protect the interests of the Kentucky Unjust Enrichment Class and have no interests antagonistic to the Kentucky unjust Enrichment Class.

177.   Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

178.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of

minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

179.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

180.    Common questions of law and fact exist as to the Kentucky Wage Class that predominate over any questions only affecting Plaintiffs and the Kentucky Wage Class members individually and include, but are not limited to:

  a.  Whether Plaintiffs and the Kentucky Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

  b.  Whether Plaintiffs and the Kentucky Wage Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

  c.  Whether Plaintiffs and the Kentucky Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

  d.  Whether Plaintiffs and the Kentucky Wage Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

  e.  Whether Defendants reimbursed Plaintiffs and the Kentucky Wage Class members for their actual expenses;

  f.  Whether Defendants reimbursed Plaintiffs and the Kentucky Wage Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

g.  Whether Defendants reimbursed Plaintiffs and the Kentucky Wage Class members based on a reasonable approximation of the expenses they incurred;

h.  Whether Defendants properly reimbursed Plaintiffs and the Kentucky Wage Class members;

i.  Whether Plaintiffs and the Kentucky Wage Class were properly informed of the requirements for taking a tip credit;

j.  Whether Defendants' uniform deduction caused Plaintiffs and the Kentucky Wage Class's hourly wage rate to drop below minimum wage;

k.  Whether Plaintiffs and the Kentucky Wage Class were actually paid the wage rate they were promised by Defendants;

l.  Whether Defendants failed to pay Plaintiffs and the Kentucky Wage Class their earned wages in a timely manner; and

m.  The nature and extent of class-wide injury and the measure of damages for those injuries.

181.  Common questions of law and fact exist as to the Kentucky Unjust Enrichment Class that predominate over any questions only affecting Plaintiffs and the Kentucky Unjust Enrichment Class members individually and include, but are not limited to:

a.  Whether Plaintiffs and the Kentucky Unjust Enrichment Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

b.  Whether Plaintiffs and the Kentucky Unjust Enrichment Class members were subject to a common policy that required them to provide cellphones to use when completing deliveries for Defendants;

c.  Whether Plaintiffs and the Kentucky Unjust Enrichment Class members were subject to a common automobile expense reimbursement policy;

d. Whether Plaintiffs and the Kentucky Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

e. Whether Plaintiffs and the Kentucky Unjust Enrichment Class conferred a benefit on Defendants;

f. Whether the benefit was conferred at Plaintiffs and the Kentucky Unjust Enrichment Class's expense;

g. Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiffs and the Kentucky Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h. How much it would have cost Defendants to operate their business but for Plaintiffs and the Kentucky Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

i. Whether Defendants appreciated the benefit that was being conferred on them by Plaintiffs and the Kentucky Unjust Enrichment Class;

j. Whether it is inequitable for Defendants to retain the benefit without payment for its value;

k. The nature and extent of class-wide injury and the measure of damages for those injuries.

182.    In recognition of the services Plaintiffs Steven Howard Heather Smothers have rendered and will continue to render to the Kentucky Rule 23 Classes, Plaintiffs will request payment of service awards upon resolution of this action.

### Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

183.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

184.    Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

185.    Defendants failed to properly claim a tip credit from the wages of Plaintiffs and the FLSA collective because Plaintiffs and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

186.    Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage for all hours worked.

187.    Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

188.    Defendants required and continue to require Plaintiffs and the FLSA Collective to work in a non-tipped capacity while being paid a tipped wage rate.

189.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

190.    Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

191.    As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Minimum Wages - K.R.S. § 337.275
### (On Behalf of Plaintiffs and the Kentucky Wage Class)

192.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

193.    Plaintiffs and the Kentucky Wage Class are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

194.    By failing to pay Plaintiffs and the Kentucky Wage Class minimum wage for all hours worked, Defendants have violated K.R.S. § 337.275.

195.    As a result of Defendants' willful failure to pay Plaintiffs and the Kentucky Wage Class minimum wage, Plaintiffs and the Kentucky Wage Class are entitled to unpaid minimum wages, liquidated damages in the amount of unpaid minimum wages, reasonable attorneys' fees, and costs pursuant to K.R.S. § 337.385.

### Count 3
### Failure to Pay Agreed Upon Wages – K.R.S. § 337.060
### (On Behalf of Plaintiffs and the Kentucky Wage Class)

196.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

197.    K.R.S. § 337.060 requires that Plaintiffs and the Kentucky Wage Class be paid all wages agreed upon between the employer and the employee.

198.    By the acts described herein, Defendants have failed to pay all agreed upon wages to Plaintiffs and the Kentucky Wage Class.

199.    As a result of Defendants' willful failure to pay Plaintiffs and the Kentucky Wage Class's agreed upon wages, Plaintiffs and the Kentucky Wage Class are entitled to unpaid wages, liquidated damages in the amount of unpaid wages, 10% interest per annum on unpaid wages, reasonable attorneys' fees, and costs pursuant to K.R.S. § 337.385; 337.990.

**Count 4**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Kentucky Unjust Enrichment Class)**

200.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

201.    Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars to work for Defendants.

202.    If it were not for Plaintiffs and the delivery drivers providing cars to use while making Defendants' deliveries, Defendants would have been required to rent or purchase their own fleet of vehicles.

203.    Plaintiffs and the delivery drivers at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cellphones to work for Defendants.

204.    If it were not for Plaintiffs and the delivery drivers providing cellphones to use while making Defendants' deliveries, Defendants would have been required to purchase cellphones for their drivers' use.

205.    Plaintiffs and the delivery drivers have conferred these benefits at their expense.

206.    Defendants are aware of and have accepted benefits conferred on them by Plaintiffs and the delivery drivers.

207.    Defendants have appreciated the benefit conferred on them by Plaintiffs and the delivery drivers.

208.    It would be unjust and inequitable for Defendants to be permitted to retain the benefits conferred on them by Plaintiffs and the delivery drivers without commensurate compensation.

209.    Plaintiffs and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses.

**WHEREFORE**, Plaintiffs Steven Howard and Heather Smothers pray for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiffs Steven Howard and Heather Smothers as representatives of the Kentucky Wage Class and Kentucky Unjust Enrichment Class and counsel of record as Class Counsel of both Kentucky Rule 23 Classes.

28

E.      A declaratory judgement that the practices complained of herein are unlawful under Kentucky law.

F.      An award of unpaid minimum wages and unreimbursed expenses due under Kentucky law.

G.      An award of agreed upon wages due under K.R.S. § 337.060 and additional back wages under K.R.S. § 337.385 and K.R.S. 337.990.

H.      An award of restitution for unjust enrichment under Kentucky law.

I.      An award of 10% interest per annum on unpaid wages under K.R.S. 337.990(4).

J.      Liquidated damages under Kentucky law.

K.      An award of prejudgment and post-judgment interest.

L.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

M.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Emily Hubbard*
Andrew R. Biller (Ohio Bar No. 0081452) (*pro hac vice forthcoming*)
Andrew P. Kimble (Ohio Bar No. 0093172) (*pro hac vice forthcoming*)
Emily A. Hubbard (Kentucky Bar No. 97494)
Riley E. Kane (Ohio Bar No. 0100141) (*pro hac vice forthcoming*)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

*rkane@billerkimble.com*

[www.billerkimble.com](www.billerkimble.com)

*Counsel for Plaintiffs and the putative class*

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ *Emily Hubbard*
Emily A. Hubbard